IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANEEN HARGROVE, | ) | CASE NO. 4:10-CV-529 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Janeen Hargrove's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On November 28, 2007, Janeen Hargrove ("Plaintiff" or "Hargrove") filed an application for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging that she became disabled on November 9, 2007, due to non-epileptic seizures and a lack of energy and focus (Tr. 87-97, 108). Plaintiff's date last insured for purposes of her Disability Benefits application was June 30, 2009 (Tr. 102).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 36-39). Plaintiff timely requested and was granted an administrative hearing (Tr. 68, 70-71). On August 11, 2009, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Wayne Stanley (the "ALJ" or "ALJ Stanley") (Tr. 4-35). Vocational expert, Ms. Karen Krull (the "VE"), also testified at the hearing (Tr. 28-35).

The ALJ issued an unfavorable decision on August 27, 2009, in which he found at step five of the five-step sequential evaluation[1] that Plaintiff retained the RFC to perform a full range of work at all exertional levels with certain restrictions (Tr. 46). Thereafter, Plaintiff requested review of the ALJ's decision from the Appeals Council. On January 13, 2010, the Appeals Council denied

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 1-3). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was twenty-two years old at the time of the ALJ's decision (Tr. 11). She graduated from high school and completed three years of college coursework (Tr. 14). She has no past relevant work experience other than part-time jobs she worked during college and high school (Tr.15).

## II. **DISABILITY STANDARD**

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## III. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether

this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's written decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. <u>ANALYSIS</u>

After reviewing Plaintiff's record, ALJ Wayne Stanley concluded that Plaintiff was not disabled under the Social Security regulations (Tr. 43-49). At step one of the sequential evaluation process, ALJ Wayne found that Hargrove had not engaged in substantial gainful activity since November 9, 2007 (Tr. 45). At step two, the ALJ determined that Plaintiff's non-epileptic seizures constituted as a severe impairment (Tr. 45). However, at step three, ALJ Wayne ruled that Plaintiff's seizures did not meet or equal the listing requirements outlined in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 46). Before moving to the next step, the ALJ held that Plaintiff retained the RFC to perform the full range of work at all exertional levels with some non-exertional limitations (Tr. 46). ALJ Stanley ruled that Plaintiff could only perform "simple, routine tasks, not involving fast pace, with only superficial contact with supervisors and coworkers[]" (Tr. 46). The ALJ also stated that Plaintiff could not work at heights or around dangerous machinery, and had limited driving abilities. At step four, ALJ Stanley found that Plaintiff had no past relevant work experience (Tr. 48). Finally, at step five, the ALJ concluded that there were jobs existing in significant numbers in the national economy which Plaintiff could perform (Tr. 48).

Hargrove challenges the ALJ's decision on two grounds. First, Plaintiff argues that the ALJ failed to properly consider the answers that the VE provided to the ALJ's hypothetical questions. Second, Hargrove contends that the ALJ failed to consider the record as a whole. The Court will address Plaintiff's claims in reverse order. For the reasons that follow, the Court finds that the ALJ's decision is supported by substantial evidence, and therefore, affirms the decision of the Commissioner.

### A. Medical Evidence

#### 1. Seizures

Plaintiff begins by arguing that, at a minimum, the ALJ should have found that she was disabled for a closed period of one year, from February of 2007 through February of 2008. During the hearing, Plaintiff testified that she began experiencing seizures in February of 2007 (Tr. 22). When asked how many seizures she suffered during that month, Plaintiff responded "a lot" (Tr. 22). She further testified that she experienced frequent seizures from 2007 until February of 2008. However, ALJ Stanley rejected Plaintiff's claim, stating that there was "no conclusive evidence that [Plaintiff's] adjustment disorder persisted at a severe level for a continuous period of 12 months beyond her alleged onset date." (Tr. 45).

The Court finds that the ALJ's decision is supported by substantial evidence. While Plaintiff's testimony indicated that she began to experience seizures in February of 2007, she also offered conflicting testimony indicating that her seizures began in November of 2007 (Tr. 22). Furthermore, the medical evidence in the record reflecting treatment for seizures only dates back to November of 2007. Also telling, is the fact that Hargrove's treatment records from St. Elizabeth Health Center on November 12, 2007, reveal that Plaintiff denied having a prior history of seizures

5

(Tr. 172-174). Aside from Plaintiff's statements at the hearing, there is no other evidence in the record showing that she suffered from seizures prior to November of 2007. Accordingly, the substantial evidence in the record supports the ALJ's conclusion that Plaintiff's disabling condition began in November of 2007.

ALJ Stanley also ruled that Plaintiff did not appear to suffer from reoccurring seizures after February of 2008. In fact, Plaintiff's hearing testimony confirms that the frequency of her seizures significantly decreased after February of 2008 (Tr. 22-26). Since that time Hargrove only reported experiencing a few seizures. At the time of the hearing, she stated that she had not suffered a seizure in six months (Tr. 22). She testified that she had one small seizure between February of 2008 and August of 2008 (Tr. 25), and one more small episode between August of 2008 and the beginning of 2009 (Tr. 25-26). Plaintiff's treatment records from the Cleveland Clinic also corroborate her lack of seizures post February of 2008. On August 18, 2008, Plaintiff's physician, Dr. Andreas Alexopoulos, opined that Plaintiff's non-epileptic seizures were largely resolved, and that she had not suffered a seizure in the past six months (Tr. 372, 374). Hargrove also testified that her physician discontinued her prescription for Tegretol, a medication used to treat seizures, in December of 2007 (Tr. 26).

Considering the evidence of record, it was reasonable for ALJ Stanley to conclude that Plaintiff's severe seizure episodes ended by February of 2008. Because substantial evidence supports the ALJ's findings that Plaintiff's condition began in November of 2007, and lasted up until February of 2008, this Court may not disturb the ALJ's decision. It was Plaintiff's burden to prove that her disabling condition lasted for a period of twelve months. [20 C.F.R. § 404.1505](). Unfortunately, she has not come forward with proof to satisfy her burden. Plaintiff has not pointed

to any proof indicating that the frequency and severity of her seizures rendered her disabled after February of 2008, or that she suffered from such at the time of the hearing. As a consequence, the ALJ's decision must be affirmed.

2. Depression and Avoidance

Next, Plaintiff avers that the ALJ failed to account for the side effects and symptoms she suffered as a result of her seizures, namely her diagnosis of depression and avoidance. Hargrove maintains that her depression and avoidance rendered her disabled from February of 2008 until the time of the hearing. In support of her argument, Plaintiff relies upon the findings of consultative psychologist, Dr. John Brescia. Dr. Brescia performed a psychological evaluation of Plaintiff on April 23, 2008 (Tr. 265-75). He opined that Hargrove was moderately impaired in the following areas: 1) the ability to relate to others, including fellow co-workers and supervisors; 2) the ability to understand, remember, and carry out tasks; 3) the ability to maintain the attention, concentration, persistence, and pace to perform routine tasks; and 4) the ability withstand the stress and pressures associated with day to day work activity (Tr. 274). The ALJ discounted Dr. Brescia's findings, because Dr. Brescia's examination was conducted only six months after Plaintiff's seizures began in November of 2007, and more recent medical evidence suggested that Plaintiff's mental state had improved (Tr. 46).

This circuit follows a two-part test in evaluating complaints of disabling symptoms, including pain. 20 C.F.R. § 404.1529(c); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(c). Second, if the ALJ finds that an underlying

7

impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.* In evaluating the claimant's symptoms, the ALJ should consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms. *Id.*; *Felisky*, 35 F.3d at 1039-40.

In the case *sub judice*, the ALJ applied the two-part test and at step two concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible (Tr. 47). Although the ALJ conceded that Hargrove suffered from a condition that could be expected to cause her alleged residual symptoms, he ultimately found that her claims regarding her symptoms did not render her disabled. ALJ Stanley listed several reasons for finding that Plaintiff's depression was not disabling and why he did not fully credit Dr. Brescia's opinions (Tr. 46-48). To begin, the ALJ pointed out that Plaintiff's seizures began around the same time that she was working two jobs while simultaneously attending college - circumstances that could easily put excessive stress on Hargrove (Tr. 47). After her first hospital visit for seizures in November of 2007, Plaintiff began treatment at a facility, the Turning Point, to help her manage her stress and depression. By August of 2008, Dr. Alexopoulos opined that Plaintiff's mental functioning was in the low average range (Tr. 372). By that time, Plaintiff had stopped working and disenrolled from college (Tr. 375). In addition, on a psychiatric/psychological report issued by the Ohio Rehabilitation Services Commission, Hargrove was noted as having increased motivation and making good progress (Tr. 344). Moreover, by October of 2008, Dr. Robert Mangiarelli, a certified vocational evaluator, opined that Plaintiff's prognosis was "fair" and that she should be able to

perform sedentary to light work (Tr. 340), and other treatment notes from the Ohio Rehabilitation Services Commission put no restrictions on Plaintiff's ability to work (Tr. 343). ALJ Stanley also addressed Plaintiff's daily activities. He commented that Plaintiff's depression and avoidance did not prevent her from maintaining a relationship with a male friend, attending to her personal needs, driving, shopping, assisting with household chores, or going to the library (Tr. 47). The ALJ further commented that Hargrove showed no signs of distress at the hearing and presented her case in a reasonable fashion. In fact, she admitted that she was doing much better since she had stopped attending college and working two jobs (Tr. 17-18).

It was the ALJ's duty to review the entire record and determine whether the symptoms complained of by Plaintiff were credible. The ALJ concluded that the record evidence did not support Plaintiff's claim that her depression and avoidance were disabling. Because the record supports the ALJ's finding, the Court holds that the ALJ's decision is sound. The fact that there may be evidence supporting a different decision does not undermine the ALJ's conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

### B. Hypothetical Question

Finally, Plaintiff avers that the ALJ failed to contemplate all of the vocational expert's answers to the hypothetical questions posed to her. Hargrove submits that had the ALJ properly assessed the VE's answers to all of the hypothetical questions, the ALJ would have concluded that Plaintiff was disabled because there were no jobs that she was capable of performing. The Court rejects Hargrove's arguments.

The ALJ posed three hypothetical questions to the VE. In the first hypothetical question, the ALJ described an individual having the same RFC as Plaintiff, with a high school education and

9

three years of college completed, and the same non-exertional limitations from which the ALJ restricted Plaintiff from exposure (Tr. 29-30). In response, the VE identified three jobs which such an individual would be able to perform: a janitor at the medium exertional level, a cleaner at the light exertional level, and a bagger at the medium exertional level (Tr. 30).

The second hypothetical question the ALJ posed to the VE depicted an individual with same physical limitations as the individual in the first hypothetical, but with certain mental limitations. This individual had a moderately impaired ability to: 1) relate to others; 2) understand, remember and carry out tasks; 3) maintain attention, concentration, persistence and pace; and 4) withstand the stress and pressures associated with daily work activity (Tr. 30). In response to the second hypothetical, the VE commented that it would be difficult to say whether such a person could maintain employment, stating "she may be able to work . . . [but] it may be very borderline in terms of her being able to do [the] jobs" previously identified (Tr. 30).

The ALJ's third hypothetical asked the VE to consider Plaintiff's testimony, and to opine whether she would be able to maintain employment, assuming that she had a seizure every day and would require at least thirty minutes to recover after each episode. This time, the VE concluded that there would be no jobs that such an individual could maintain under such conditions. The ALJ also posed a follow up question to the VE, asking whether an individual who missed one day of work each six months presented an issue for most employers. In response, the VE indicated that this type of absence would not be a problem for a typical employer.

Finally, Plaintiff's attorney asked the VE a hypothetical question describing an individual with the same physical limitations from the ALJ's first hypothetical, but with additional non-exertional limitations (Tr. 33-34). Plaintiff's attorney described the individual as having a moderate

10

impairment in: 1) relating to others; 2) understanding, remembering and carrying out tasks; 3) maintaining attention, concentration, persistence and pace; 4) completing tasks; and 5) withstanding the stress and pressures of daily work.  The person also had a high degree of dependency, a lack of interest and motivation to complete tasks, and was unable to handle situational stressors appropriately (Tr. 34).  The VE answered that such an individual would not be able to perform the jobs previously identified.

The Sixth Circuit recognizes that "[i]f the [ALJ's] hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987).  After reviewing the evidence in the record, the ALJ reasonably found that Plaintiff retained the RFC to complete a full range of work at all exertional levels.  ALJ Stanley further ruled that the intensity, persistence and limiting effects of Plaintiff's mental impairments were not fully credible.  Accordingly, he was not obligated to reference them in his hypothetical question posed to the VE.  Even so, the VE opined that the individual described in the ALJ's second hypothetical, which acknowledged some of Plaintiff's alleged mental impairments, could still perform the jobs identified by the VE, although it would be questionable. Because the ALJ did not find that all of Plaintiff's alleged symptoms were credible, he was free to disregard the VE's answers to the ALJ's third hypothetical and the hypothetical posed by Plaintiff's attorney, because both questions contained mental impairments which the ALJ discredited or found were unsubstantiated, such as Plaintiff's allegation that it took her thirty minutes to recover after each seizure.  As a result, the VE's answers to the ALJ's first two hypotheticals provided substantial support for the ALJ's finding that there were jobs existing in significant numbers in the national

11

economy which Plaintiff could perform. Thus, the ALJ's step five finding was proper, and remand is not warranted.

Lastly, Plaintiff maintains that she is entitled to benefits because the Social Security Act was intended to be liberally construed. While the Court agrees with Plaintiff, that the Social Security Act should be liberally construed, the Court must put substance before form. This is not a case in which the ALJ's analysis of the evidence was so one-sided as to offend the spirit of the Social Security Act. The ALJ's determination was well within his zone of choices under the regulations. Therefore, the Court rejects Plaintiff's assertions to the contrary.

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court AFFIRMS decision of the Commissioner.

                                                   s/ Kenneth S. McHargh
                                                   Kenneth S. McHargh
                                                   United States Magistrate Judge

Date: February 24, 2011.